[Civ. No. 19842. First Dist., Div. Two. Mar. 23, 1962.]

JOSEPH R. SCHMITZ, Plaintiff and Respondent, v. LOWELL H. DUGGAN, Defendant and Appellant.

Burd & Quantz and Charles J. Quantz for Defendant and Appellant.

Richard A. Case for Plaintiff and Respondent.

AGEE, J.—Defendant appeals from a money judgment of $6,494 in favor of plaintiff. Both parties are real estate brokers and this litigation arises out of two agreements between them, dated June 1, 1954, and November 30, 1954, respectively. Some background is necessary.

Federal National Mortgage Association (FNMA) is a corporate instrumentality of the United States. One of its purposes is to provide assistance for the financing of mortgages guaranteed by the Administrator of Veterans' Affairs (VA) or issued by the Federal Housing Administration (FHA) as a means of retarding a decline in mortgage-lending and home-building activities. In 1953, Congress passed a law authorizing

FNMA to issue commitments, referred to as "Advance Contracts to Purchase," under which FNMA agreed to purchase a specific dollar amount of acceptable VA and FHA mortgages within one year after issuance of the particular contract. The authority to issue such contracts expired on July 1, 1954, but this did not affect the one-year commitment period in contracts issued prior to said date.

These purchase contracts could be made only with an "eligible seller," which is defined as an organized business enterprise which has as one of its principal purposes the making or purchasing of loans secured by real estate mortgages. Berkeley Savings and Loan Association and McMillan Mortgage Company both qualified as such eligible sellers.

On June 1, 1954, plaintiff and defendant entered into a one-page agreement prepared by defendant, whereby defendant was to obtain rights under an FNMA advance purchase contract in the aggregate principal amount of $250,000. Plaintiff was thereby to be entitled to sell to FNMA, through the loan association, VA-guaranteed mortgages in this aggregate amount. The loan association was to be the original mortgagee and plaintiff was to effect the necessary sales to individual home buyers who qualified for a VA mortgage loan.

In accordance with the agreement, plaintiff paid into the loan association the sum of $5,000, that being 2 per cent of the amount of the proposed FNMA contract, such sum to "be disbursed by Berkeley Savings and Loan Association at their discretion to cover the purchase of a FNMA Purchase Contract." The agreement provided that plaintiff was to execute a promissory note for the "balance of the full purchase price" in favor of the "Seller" from whom the contract was to be obtained. If the contract was not obtained, plaintiff was to receive back his $5,000, "without any charges whatsoever."

Neither the amount of the purchase price nor the amount of the "balance" was stated in the agreement nor can it be ascertained therefrom. The testimony, however, indicates that plaintiff was to be charged a total of 6 per cent of the amount of the FNMA contract, or $15,000. The note was never executed, it later being agreed that the balance of 4 per cent would be paid through the loan association.

Between July 21, 1954, and November 13, 1954, plaintiff delivered 29 transactions to the loan association, each representing a sale of a home to a veteran entitled to VA mortgage financing. The aggregate principal amount of these mortgages

was $249,575 and, as a practical matter, exhausted the commitment of $250,000 to which plaintiff was entitled.

In early 1955, plaintiff learned for the first time that FNMA was charging "an acquisition and service charge" of one-half per cent of the principal amount of each mortgage purchased by it. As hereafter seen, the parties thereupon treated this as part of the 4 per cent balance to be charged against plaintiff.

On March 28, 1955, the loan association was directed in a letter from plaintiff to disburse to defendant the sum of $5,000 immediately and the further sum of $8,750, to be paid out of the 29 escrows as they were closed. The letter sets forth the names of the individual borrowers, the principal amounts of the respective mortgages, and the respective amounts to be paid to defendant from each. These latter amounts are computed on the basis of 3½ per cent instead of 4 per cent, apparently because of the ½ per cent charge made by FNMA.

The "Williamson" mortgage was for $7,850 but plaintiff authorized it to be computed as though $8,275, in order to make up the difference between the $250,000 commitment and the $249,575 actually submitted. The "Helmick" mortgage was in the principal amount of $9,000 and the amount to be paid defendant from it was therefore $315. Through an inadvertence, defendant received this sum twice. Both parties testified to this duplicate payment and it is not in dispute.

During the earlier part of this litigation, defendant never raised any question that plaintiff was entitled to a judgment of $315 against him under the June 1, 1954, agreement. The dispute at that time was confined to the second agreement. In his original verified answer to plaintiff's complaint, *defendant* alleges as follows: "That on account of the aforesaid agreement dated June 1, 1954, Exhibit 'A' hereto, defendant received in payment against the agreed purchase price payable thereunder by plaintiff to defendant in the amount of THIRTEEN THOUSAND SEVEN HUNDRED FIFTY ($13,-750.00) DOLLARS, a total sum of FOURTEEN THOUSAND SIXTY-FIVE ($14,065.00) DOLLARS, and defendant was accordingly *overpaid* the sum of THREE HUNDRED FIFTEEN ($315.00) DOLLARS thereon." With respect to the June 1, 1954, agreement, defendant prayed that judgment "be entered . . . *against defendant* in the sum of THREE HUNDRED FIFTEEN ($315.00) DOLLARS." (Emphases ours.)

Approximately *two years* after this action was filed, defendant amended his answer to allege that under the agreement of

June 1, 1954, he was to be paid $15,000, instead of $13,750. Despite this, he testified at the trial under cross-examination as follows: "Q. All right. And as of that time, isn't it a fact that the June 1 contract, Plaintiff's Exhibit No. 1, was completed with the exception of $315.00? A. Yes. Q. And by completed, I mean as far as you are concerned, Mr. Schmitz [plaintiff] had delivered under that contract and you had received the funds that you were entitled to under that contract except for the $315.00? A. Yes."

The letter of March 28, 1955, from plaintiff to the loan association, was introduced in evidence by defendant. He received a copy of it at the time. After directing the payment of $5,000 and $8,750 to defendant, the letter concludes: "The balance of the funds in connection with these escrows is to be remitted directly to the undersigned [plaintiff]." This letter clearly demonstrates exactly what defendant alleged in his original answer to the complaint, that he was to receive $13,750, and no more, on account of the June 1, 1954, agreement. It seems obvious that this was the amount mutually agreed upon by the parties.

The trial court found that "the terms of the June 1, 1954, contract were fully complied with by plaintiff and defendant, with the exception of the sum of $315.00 which was received by defendant as an over-payment." This finding is supported by substantial evidence and completely disposes of the issues involved in connection with the first agreement.

■ On November 30, 1954, plaintiff and defendant entered into a second agreement under which plaintiff delivered to defendant his check for $5,000. This agreement was also prepared by defendant. It provides: "The above check constitutes two per cent (2%) of the purchase price of a total of six per cent (6%) of a Federal National Mortgage Association Purchase Contract in the amount of Two Hundred Fifty Thousand and No/100ths Dollars, ($250,000.00), permitting the purchaser to sell to FNMA through a FNMA designated Mortgagee insured VA mortgages in individual units not exceeding Ten Thousand and No/100ths Dollars ($10,000.00), each."

Defendant testified that the originating mortgagee under this agreement was McMillan Mortgage Company and that the 4 per cent difference between the 2 per cent and the 6 per cent referred to in the agreement was to be paid through the mortgage company from escrows to be set up as plaintiff brought in the necessary transactions.

The record shows that, under the November 30, 1954, agreement, plaintiff closed out 22 loan transactions through the mortgage company, totaling $182,700, and between February 7, 1955, and April 14, 1955, he submitted 8 additional loan transactions, totaling $65,550. These transactions were not completed because they could not be processed through FNMA before the mortgage company's commitment expired.

Plaintiff testified that defendant had told him in October or November 1954, that he had "about a year" to complete the contract; that he knew nothing about the expiration of the contract until he heard this from the mortgage company sometime after May 19, 1955. Defendant admitted that the contract expired on May 9, 1955. On May 19, 1955, defendant went to Sacramento and obtained $3,000 from plaintiff. Defendant testified that "it was obvious that the loans were not going to be processed to FNMA, and I asked Mr. Schmitz [plaintiff] to pay my additional $3,000 of the moneys owing me in order that payments, plus what I would receive out of loans that were presently being processed would make up the $15,000 owing to me." Defendant acknowledged receiving $6,810.75 through the mortgage company.

Plaintiff refers to the payment of $3,000 in a letter to defendant, dated May 20, 1955, as follows: "Yesterday when you were in Sacramento, I handed you our check No. 7787 for $3,000.00 to apply on FNMA take out with McMillan Mortgage Company. This is in addition to $5,000.00 paid to your office on November 30, 1954."

The lower court concluded that plaintiff was entitled to the return of the $5,000 and the $3,000, less the amount of $1,821, which plaintiff had received from the mortgage company out of the escrows closed by it.

The basis of the lower court's decision under the second agreement is stated in its findings, as follows: "That defendant did not provide Federal National Mortgage Association purchase contract in the sum of $250,000.00." This finding has no support in the evidence. In addition to the defendant's testimony that he did comply with the agreement in this respect, there is in evidence a letter written by plaintiff to defendant on May 20, 1955, which states: "Enclosed is itemized list of FNMA loan applications closed through McMillan Mortgage Company, which shows that we have closed $182,-700.00 worth of loans, and at this time we have still with them eight applications totaling $65,550.00." There is no evidence in the record that defendant did not obtain a

$250,000 commitment for plaintiff under a FNMA contract held by McMillan Mortgage Company. The fact that $182,700 in loans had already been closed is strong evidence that such commitment had been obtained.

Perhaps the trial court misunderstood the mechanics of the transaction. This is indicated by the following additional finding: "That defendant did not under the November 30, 1954 contract *deliver* the FNMA purchase contract within the period of time set forth therein, or any other time." (Emphasis added.) There is no provision in the agreement of November 30, 1954, that defendant should deliver any contract to plaintiff. As pointed out above, FNMA made advance purchase contracts only with an "eligible seller," which McMillan Mortgage Company was and plaintiff was not. All that defendant could "deliver" to plaintiff and all that plaintiff could receive was an allocation of a certain amount of a commitment under an FNMA purchase contract held by an eligible seller. Plaintiff admitted that he had received and used up such an allocation to the extent of $182,700, leaving a balance to which he was entitled of $67,300. To illustrate what we have said, the commitment of $250,000 provided for in the first agreement was obtained under an FNMA Advance Contract To Purchase held by the Berkeley Savings and Loan Association in the total amount of $862,000. The commitment obtained by plaintiff in that instance was only a portion of the total amount of the contract involved.

It is apparent from the foregoing that there must be a retrial of the issues raised under the second agreement. Count One of the complaint alleges the payment of $5,000 by plaintiff to defendant under the November 30, 1954, agreement. An acknowledged credit of $1,821 leaves an alleged balance due of $3,179. Count Two alleges the payment of $3,000 by plaintiff to defendant on May 19, 1955. Therefore, plaintiff is seeking a recovery of $6,179 under the second agreement. Count Three of the complaint alleges the overpayment of $315 under the first agreement. This count has been disposed of herein. The amended answer and counterclaim of defendant admits the payments of $5,000 and $3,000 alleged in Counts One and Two, respectively, and acknowledges payment of the further sum of $6,810.75 from escrows, leaving a claimed balance of $189.25 due to defendant under the second agreement.

The findings with relation to the second agreement contain negatives pregnant and other inconsistencies. It is hoped that

these will be avoided on a retrial. It is also hoped that the records of McMillan Mortgage Company will be produced and further inquiry made as to whether defendant did or did not obtain from such company the commitment of $250,000 as provided in the agreement. The trial court should also be given the records of the payments made by McMillan to defendant instead of having only the admission in his pleadings that he had received only $6,810.75 from McMillan.

That portion of the judgment awarding $315 to plaintiff under Count Three of the complaint, as an overpayment under the agreement of June 1, 1954, is affirmed. The remaining portion of the judgment, amounting to $6,179, is reversed with instructions to the lower court to retry the issues raised by the allegations of Counts One and Two of the complaint and the amended answer and counterclaim of the defendant. Each party is to bear his own costs on appeal.

Kaufman, P. J., and Shoemaker, J., concurred.